All rise. The Illinois Appellate Court for the Division is now in session. Honorable Justice David R. Navarro is presiding. Have a seat. Madam Clerk, would you call the case? Case 1-25-1260, Ivory Levert v. Ronza Hagey-Levert. Good morning, everybody. Counselors, you'll each have 15 minutes for arguments and a count. You'll be given five minutes for rebuttal. You don't have to reserve any time. Great. Thank you, Your Honor. May it please the Court, this case rests on three uncontested facts. One, the temporary guardian in this case never established a guardianship estate. I'm sorry, counsel. Can you give us your name, please? Sure. It's Matt Hefner, M-A-T-T-H-E-F-F-A-R. I should have said, these microphones are good at recording. They're not good at amplifying. Gotcha. No guardianship estate was ever created in this case. No citation of assets was ever made. No inventory was ever filed. Therefore, there were no funds for Dr. Levert to be paid from. That's the end of the inquiry under the statute. There is no equitable exception in the trial court hearing. Should there be? No. There shouldn't be. There should not be, Your Honor. So Judge Jesse Outlaw did the wrong thing. That's correct, Your Honor. Compassion is not allowed in these type of proceedings. In this situation where the statute is clear, that's absolutely correct, Your Honor. Especially in a situation where the trial court did not even consider all the equities in this case, there was no chance for Ms. Ivory Levert, the widowed mother of two babies, to present any evidence as to what had happened prior to the reimbursement order being entered by the district court or the trial court. He jumped the gun, the trial court. He didn't follow any of the procedures under the statute, and that is where this case begins and it is where it ends. The trial court did not have power to amend the statute on its own, and we would ask this court to enforce the statute as written. The procedures in the guardianship proceedings in the Probate Act are very clear. Section 11A.18 defines the guardian's authority to manage and apply the estate. The estate has to be formed. Section 14-1 requires a verified inventory of all property that has come to the guardian's knowledge, filed within 60 days of the letters being issued. That was never done in this case. Section 16-1 provides the exclusive mechanism to bring a third party into a guardianship issue and have the property brought before the court, and that's a citation of assets. That was never done. The third party in this instance is the GoFundMe. The third party in this case is Ivory LaVert. I want to be clear. The order that this judge entered is against Ivory LaVert. It is a personal issue. He has issued an order that she personally must reimburse Dr. Rhonda LaVert in a probate action with no in-rem authority over the funds. But he did have jurisdiction over Ivory, correct? He had personal jurisdiction. I'm using personal jurisdiction because everybody has the same last name. So he had personal jurisdiction over her. He had personal jurisdiction over Ivory. Absolutely. And your argument is not to enter the money judgment against her, essentially. That's right. Okay. And he had no jurisdiction over the GoFundMe money. What about the issue that's raised that Ivory, there was a report in lieu of accounting that was filed, and then that Ivory doesn't object to it. How do you respond to that? First of all, she did object to it. In her response paper, she absolutely objected to it because the trial court never made a finding of disability in the case. All the procedures were blunt. She also argued that there was no appointment of a guardian, only a temporary guardian. There was no proposed or accepted inventory or budget. This was all argued in her response. There was no creation of a guardianship estate. There was no approved care plan. There was no interim order authorizing expenditures on behalf of the ward. In this case, $119,000 has allegedly been spent on behalf of somebody with no one going to court to ask if it was okay, in a guardianship issue, a temporary guardianship issue at that. This was all argued in the court below. What she didn't object to, Ivory in the lower court, was the notion that in this report in lieu, she made the admission that no funds were ever marshaled into the guardianship estate. That's the end of the issue right there under the statute. That ends it. So it's no wonder that that was stated on the record in the court below by the trial counsel. Once that admission is made, there's no way for Ms. LaVert to be reimbursed. Instead, what she could do or what she should have done is she could have brought a claim in the decedent's estate. Now, I would like to say one thing that I forgot in response to Your Honor's question. That report in lieu was filed after the ward had died. It was two months after. Are you arguing that the court didn't have any jurisdiction at that time to enter a reimbursement order? I'm arguing that the court at that time did not have jurisdiction to add to the guardianship estate. After the ward has died, under the statute, the guardian can preserve the funds that have been marshaled into an estate. But they cannot expand them. The statute does not allow that. And that's effectively what the court was doing. Unfortunately, he did something much worse and entered an order against Ms. LaVert in a personal capacity that is now being used in the state of Ohio as a judgment, a money judgment. And she, on Friday, I just found this out today, she, on Friday, is scheduled for a debtor's exam. To enforce an order issued by an Illinois probate court over funds, he did not have jurisdiction to order anything over. So what part of the order from May 29, 2025, are you asking us to reverse? I'm just trying to sort out the relief they are seeking. It's a little bit different in your opening brief versus your reply brief. Specifically, in the order, it's number two is the main portion. That's the portion that says that the reimbursement is hereby granted. Are you asking us to reverse the granting of the petition for reimbursement? Or solely for the part of that paragraph that I've redirected to reimburse Dr. LaVert the sum of $119,000 in change from the GoFundMe? The entire thing. A petition for reimbursement cannot be granted in this case from a $0 guardianship estate. There is no reimbursement to be had. It has to come from the guardianship estate if this court is going to enter the order. Now, in a decedent's estate, perhaps Rhonda could go in and make a claim based on the fact that she spent this money on Ernest's behalf. But she has not done that. That is the proper place for that issue to be decided. Was there an existing decision? No. Finally, I'd like to address the remedies for this issue. We're asking for a reversal of the order, specifically point two, as Your Honor has just asked. We are also asking for the court to remand with instructions to dismiss this case. There is no reason for this case to be remanded for any further proceedings. The guardianship estate has been closed pursuant to the order. There is no more jurisdiction left in that court. This case should end here today. Ms. Ivor LaVert has been through enough. She needs to get on with her life. She's the mother of two babies. And this case, this issue should have never been brought in front of that court. She spent enough money. It's time for this to end. And the contempt proceeding? The contempt proceeding would end.  Yes, the contempt proceeding should end, obviously, because the court entered it. The court did not order the actual temporary guardian in this case to file an accounting. Instead, it ordered Ivory LaVert to give an accounting of the GoFundMe funds to a court that doesn't have any jurisdiction over them. In an estate for a ward that has already died, that contempt proceeding should just go away. That's the subject of the other appeal. That's the subject of the other appeal, yes. And two emergency motions to stay those proceedings so that we can argue these issues, have the merits decided, and then have the trial court, if it has anything left to do, do it. If there aren't any other questions, I can waive the rest of my time. I would reserve my five minutes for rebuttal. Thank you. Thank you. Good morning, Your Honors. Good morning. Kevin Todd on behalf of Eppley, Dr. Rhonda Hagee LaVert. First of all, just to address a couple of the points that were in questions previously posed by the court, Your Honor asked a question about does equity have anything to do with this? Were equitable considerations properly considered? To the degree that they were. I think the answer to that is yes. And there is no evidence in the record to indicate that, A, Ivory, we'll call her Ivory as you suggested, to keep things clear, that Ivory ever requested the opportunity to make any equitable arguments. It's also true that the record bears out that her situation was delivered repeatedly. The court was well aware of where the relative equities rested there. So the court properly considered the entirety of the situation. This case, like many of the court hears, was birthed in tragedy. I mean, there's no question a 33-year-old young man dying. That's a horrible circumstance. It's a horrible circumstance for Ivory. It's a horrible circumstance for Irna's mother, who is my client. Dr. Rhonda LaVert stepped in to provide the care necessary for her son. And that's what she did. She did that from day one. She incurred expenses, which ultimately were $119,000 that she funded herself to ensure that her son would receive the proper care, because absent her involvement, that was not going to happen. Did she have an arrangement or an agreement with Ivory at the time she did that? She – I don't – I want to be careful. Well, if the record says it, then you can just answer that. Yeah, I don't believe that there's anything in the record to make that clear. There was certainly no – there was communications between them and within the family, for sure. Was there a written agreement in the nature of a contract? No. But what she undertook was with the awareness of the family. With respect to whether funds or whether assets were marshaled, the reason that that process didn't progress beyond the point it did was because, unfortunately, Ernest died before that would have been due. What is known is that these assets were included in the report in lieu of accounting. The GoFundMe funds were included in there. The joint account between Ernest and Ivory was listed there. That was the account into which the GoFundMe funds were deposited. That is clearly an account, an asset, over which the probate court would have jurisdiction. But hold on. When you say that they're listed in there as assets. Correct. The language of your petition or report in lieu says, that no assets were available to be marshaled into a guardianship estate. However, the temporary guardian believes Ernest's assets to be, and it lists a variety of things, including something like Ivory's monthly income, which is then listed as not a guardianship asset. So are you saying that by granting this report or accepting this report, the court brought all of these assets into the guardianship estate? They're assets over which the court had jurisdiction, yes. Even Ivory's monthly income of $4,000 a month, which is listed as not a guardianship asset? Well, that was the reason for the parenthetical. Because the obligation on the guardian is to apprise the court of available resources for care of the ward. And that's what Dr. LeVert did. These were things that were available to provide for and meet his needs. What about, how would you respond to counsel's argument that once Ernest passed away, any guardianship estate that hadn't been set up yet, now really we should be talking about a decedent's estate. And all this should be proceeding under a decedent's estate. What about that? How do you respond to that? I appreciate that, Justice Navarro. That is something that Judge Outlaw was well aware of. He's an experienced guardianship judge. He did, he handled this matter appropriately as he has done, as I'm sure he has done in other instances, to essentially finish up the matters that were in front of him. And the matters that were in front of him at that time were the reimbursements that the guardian had incurred. I don't think there's been any substantive argument that these expenses were not legitimate, were not genuine, were phoning up in some fashion. There's no question about that. I don't believe the record supports any argument on that score. And so what Judge Outlaw was doing was recognizing that there were, with respect to the GoFundMe account, it's not an account, GoFundMe campaign funds, that those funds were raised under the auspices of providing the best loving care for Ernest. That was being done during Ernest's lifetime. Those funds were coming in during Ernest's lifetime. And therefore, Judge Outlaw properly recognized funds raised during my handling of this case during the ward's lifetime are properly funds that are available to reimburse the guardian's expenses. She didn't incur these expenses on a lark. She incurred them for her son, for whom she was then appointed the temporary guardian. But she incurred a lot of those expenses before she was appointed temporary guardian. That's correct. And does the statute, what statute would provide, that she would, provides her to be able, gives her the legal basis to ask for a reimbursement for expenses she incurred months before she became the temporary guardian? That, I think, somewhat goes back to the question that was asked earlier about, you know, was there an agreement. There was certainly discussion within the family about the expenses, the activities being undertaken by Dr. LaFert. Now, does the statute, does it preclude those expenses? I don't believe so. I think, and I have my probate code there. I can check it. But what is reimbursable are funds expended on behalf of the ward. There's no question that Ernest was the ward. There's no question that these funds were, that these expenses were incurred on his behalf and for his well-being. Does that answer your question, Your Honor? Sure. And you're right. Your question earlier, Justice Gwish, was did the court have personal jurisdiction over Ivory? The answer to that is admittedly yes. And therefore, Judge Outlaw recognized that he could take the action that he took to ensure that the funds that were incurred, that the expenses that were incurred were reimbursed by the person before him who had funds available to do that to the extent that those funds, I mean, the expenses were obviously above the $97,000, $98,000 raised through the GoFundMe campaign. But he, what Judge Outlaw recognized was that those funds were raised for the express purpose for which Dr. LaFert was seeking reimbursement. So an individual contributes to a GoFundMe campaign under the understanding that this is going to help support the loving care of Ernest LaVerne. Arguably, can you say that the supporting the children of Ernest LaVerne to two minor children, minor children, that support of those children is part of the care of Mr. LaVerne? Well, that was not what the campaign defined itself as. But, okay, so that's not what the campaign defined itself as. But I, as the campaign donor, I'm giving money, an individual gives money to this under some understanding it's going to benefit, whatever it's going to benefit. But I don't have, what's my guarantee? I guess if it's not used for that specific purpose, that's a right between the campaign donor and the GoFundMe account holder, right? I think the way it actually, I believe the way it actually works is if someone feels that they've been, you know, defaulted, somebody, you know, says my mom has cancer, starts a GoFundMe campaign, raises money, mom doesn't have cancer, they go to Jamaica. Yeah. That donor can then go to GoFundMe and receive back the funds that they've raised. Okay. So if there's some belief that, I mean, I don't think within the record, we don't have any feedbacks that say the money's raised, this $97,000 raise was used for some untoward reason. We don't have any, there's nothing that's alleged or nothing in the record that says that. It's only that it hasn't been used to reimburse mother for her expenses, arguably on behalf of, as guardian, right? That's the only thing. Not that it was used for a wrong purpose, but it hasn't been used to reimburse mother. I believe at this point that's an open question, because I've always been ordered four times, I want to say, to provide accountings, to provide proper, acceptable accountings, which each time Judge Outlaw has said these are inadequate. So I think to answer your question as accurately as I can, there has been some, I'll call it explanations provided, some documentation provided that the court, the trial court, Judge Outlaw has not accepted. He has rejected those as being defective. Would you say that if this matter, if this court resolves this case in appellant's favor, that would put those issues to rest? If the court overturned all of the... If we give the release sought by the appellant, that then would move or would put to rest any of those issues? Those issues being accounting for those funds? Yes. Very possibly. Okay. That's something, frankly, I'd need to give some more thought to, because, but, yeah, I mean, clearly the accounting obligation arises from the failure to pay the funds over. And the fact that Judge Outlaw believed, I think correctly, but believed that he had jurisdiction over the GoFundMe funds. And he's, $98,000, where did it go? Is his thinking, I believe, Justice? Sorry. I know it wasn't addressed in the opening argument just now by Ivory's counsel, but the one case that they do cite is the McInerney case. And I believe we've, I think, well distinguished that from the situation at hand here. That case involved Supplemental Needs Trust. And what's significant and distinguishes that case, I think, dispositively from this case, is that in McInerney, the parties agreed that the Supplemental Needs Trust was not part of the estate. Here, obviously, the central, a central contention on our side is that those funds absolutely are part of the estate. And within the jurisdiction of Judge Outlaw to address how they are disposed of. How did the court get jurisdiction over the GoFundMe? Because, one, they were identified in the report in lieu. As something that was believed to be an asset. Correct. And that's sufficient. Upon Judge Outlaw approving the report in lieu, yes. Did you ask him to specifically find that the GoFundMe was part of the guardianship estate? It was included in the, it was included as an asset believed to be the, an asset of the estate. And that was approved. The proof of that is that Judge Outlaw thereafter ordered that those funds be used to reimburse Dr. Levert. You can't get to that latter point without traveling through the earlier point of establishing that those funds were included within the estate. And what's the legal basis to support that argument? That listing it as a potential asset in the report in lieu is sufficient to give the court jurisdiction over that asset? A, it wasn't, I contend that it was not objected to. Two, the court recognized that to be true and made that determination. And three, there was no demand or request for an inventory or any other substantiation for those funds to be included in the estate. And they were, therefore, I believe, included in the estate. I think regardless of whether they were, Judge Outlaw could reach those estates by, reach those assets by virtue of his jurisdiction over Ivory and her representation that they were raised for, for earnest benefit. Thank you. So Judge Outlaw could have gotten to the point where he got in establishing that, concluding that the assets, the GoFundMe campaign funds were included in the estate by, you know, multiple bases. Whether it be because they were listed on the report in lieu, whether it was because they were raised for the express purpose of benefiting earnest, or because they were then deposited into the joint account. So any one of those bases would be sufficient for this court's affirming the trial court's order. I think that's all I've got, Your Honors. Thank you. Thank you, Counsel. May it please the Court? Yes. I'm going to try to bullet point these as quick as I can. First, there's no evidence in the record that Ivory LaBert used the GoFundMe funds for anything untoward. Nothing. In fact, the very fact that the trial court is now trying to get her to give an accounting to the court of how those funds were spent is proof that he has no idea how the funds were spent and could make no equitable determination if he's going to weigh the equities between these two people as to who should pay what and who should be reimbursed for what through the GoFundMe funds. He had no ability to do that. He's still struggling with that issue, apparently. That's why he keeps asking for an accounting. I have no idea why a court needs an accounting, though, of these funds if he's already issued a reimbursement order of a set dollar amount. That makes no sense. He's ordered Ivory to pay Rhonda $119,000 while my esteemed colleague has just admitted that the GoFundMe funds were $98,000. How does that order come about? Why would Ms. LaVert have to kick in an extra $22,000 of her own money to pay her mother-in-law when she, too, was spending money in the care of her husband? I want to make one thing very clear here. Ms. Rhonda LaVert was not the only one paying expenses on behalf of Ernest. Ivory LaVert had been paying them for a very long time, and she continued to pay them through this guardianship process. Again, counsel said that there were some accountings that were provided to the court. That's right, and I have a listing of them here that were attempted to be provided, and the court said he didn't like the form. You can go through these line by line and see that from that money, you can see right off the bat $60,000 or thereabout was spent trying to retrofit the LaVert home in Ohio to make sure that he could maneuver around it because he was essentially, he could not move, and he had a wheelchair. So we know that. That was provided to the court. Again, why would that matter if we're not going to look at what these funds were spent on? There was no agreement in the record between Ivory and anyone to pay out of the GoFundMe funds. Or to pay at all? Or to reimburse them at all? Correct. There's nothing in the record to suggest that. The reason that no accounting was filed has nothing to do with the fact that Mr. LaVert died in January. They had 60 days to do that under the statute. She was appointed the temporary guardian in October. It should have been done, and it was not. The last thing that I want to address is nowhere in the appellee's brief and today have they cited a statutory provision that gave Judge Outlaw the authority to do what he did. Not a single statutory authority. Mr. Todd's response was, Judge Outlaw was a highly experienced judge. I appreciate that. He is. However, under our system, you have to do things according to the statute and the rules. And there is no rule or statute that gave him the authority to do what he did. This order, portion number two, must be reversed. If the court doesn't have any other questions, I will wait the rest of my time. Thank you, counsel. Thank you. Thank you for the well-argued presentation. We'll take this matter under advisement and issue an opinion in due course. Thank you. Thank you. All rise.